# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGINALD MILLNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1137-GMS |
| | ) | |
| STATE OF DELAWARE DEPARTMENT | ) | |
| OF EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF
### THEIR MOTION FOR SUMMARY JUDGMENT

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Devera B. Scott*
Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302) 257-3218
Devera.Scott@state.de.us

*/s/ Scott W. Perkins*
Scott W. Perkins, ID No. 5049
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Scott.Perkins@state.de.us

*Attorneys for Defendants, State of Delaware
Department of Education, Glenda
Riedmiller, John Moyer III, Lillian Lowery,
Linda Rogers, Daniel Cruce, Mary Cooke,
Michael Stetter, and Mark Murphy*

Dated:  May 14, 2014

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..............................................................................................ii-iii

NATURE AND STAGE OF PROCEEDINGS .................................................................1

SUMMARY OF THE ARGUMENT .........................................................................1-2

STATEMENT OF FACTS ...........................................................................................3-6

ARGUMENT .............................................................................................................6-20

    I.     Millner's constitutional claims must be dismissed because Defendants are entitled to sovereign immunity.

          A.  The Eleventh Amendment protects Defendants from liability in their official capacities.

          B.  Defendants are entitled to qualified immunity in their individual capacities because Millner failed to show that they violated his constitutional rights.

    II.    Millner fails to establish a constitutional claim under Section 1983 against the Defendants because he cannot show that they were personally involved in the alleged violation of his rights.

    III.   The Court should decline to exercise supplemental jurisdiction over Millner's state law claims against the Defendants.

          A.  State Tort Claims Act.

          B.  Delaware Whistleblower's Protection Act.

          C.  Defamation.

          D.  Breach of the implied covenant of good faith and fair dealing.

    IV.   The statute of limitations is an absolute bar to Millner's state law tort claims and constitutional claims of racial discrimination in the workplace.

    V.    The Court lacks personal jurisdiction over Defendant Lillian Lowery, and all of Millner's claims against her must be dismissed.

CONCLUSION ...............................................................................................................20

## **TABLE OF AUTHORITIES**

**CASES**                                                                                            **PAGE**

*Ayres v. Jacobs & Crumplar,* 99 F.3d 565 (3d Cir. 1996)..........................................................20

*Baker v. James T. Vaughn Corr. Ctr.*, 425 Fed.Appx. 83 (3d Cir. 2011).......................................8

*Barber v. CSX Distribution Svcs.*, 68 F.3d 694 (3d Cir. 1995)......................................................11

*Carroll v. ABM Janitorial Services-Mid Atlantic, Inc.*,
2012 WL 3870341 *2 (D.Del. Sept. 5, 2012).................................................................................19

*Daoud v. City of Wilmington*, 894 F.Supp.2d 544 (D.Del. 2012).................................................19

*Ford v. Unum Life Ins. Co. of America*, 465 F.Supp.2d 324 (D.Del. 2006)...................................7

*Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99 (D.Del. 2005) .........................................7,8

*Hafer v. Melo*, 502 U.S. 21 (1991) ..............................................................................................8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................................................9

*Jordan v. Town of Milton*, 2013 WL 105319 (D.Del. Jan. 3, 2013).........................................16,17

*Joyner v. School Dist. of Phila.,* 313 F. Supp. 2d 495 (E.D. Pa. 2004) ........................................8

*Kabbaj v. Google, Inc.*, 2014 WL 1369864 (D.Del. April 7, 2014) .............................................17

*Mosaka-Wright v. LaRoche College*, 2012 WL 3060151 (W.D.Pa. July 25, 2012)....................11

*Mulrooney v. Corp. Serv. Co.*, 2013 WL 1246769 (D.Del. March 27, 2013) ..............................18

*Pauley v. Reinoehl*, 848 A.2d 568 (Del. 2004) ...........................................................................14

*Pearson v. Callahan*, 555 U.S. 223 (2009)..........................................................................9,10,12

*Pa. v. Porter*, 659 F.2d 306 (3d Cir. 1981), *rev'd on other grounds,*
659 F.2d 306 (3d. Cir. 1981), *cert. denied*, 458 U.S. 1121 (1982)...............................................13

*Rahim v. Holden*, 831 F. Supp.2d. 845 (D. Del. 2011)................................................................13

*Riley v. Jeffes*, 777 F.2d 143 (3d Cir. 1985) ...............................................................................13

*Robinson v. Dalton,* 107 F.3d 1018 (3d Cir.1997).........................................................................8

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) ...................................................13

*Santiago v. Warminster Tp.*, 629 F.3d 121 (3d Cir. 2010) ..............................................14

*Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996) ...................9

*Shipley v. First Federal Sav & Loan Ass'n of Del.*, 703 F.Supp. 1122 (D.Del. 1988) .................12

*Sprout v. Ellenburg Capital Corp.*, 1997 WL 716901 (Del. Super. Aug. 26, 1997) ...................15

*DHSS v. Sheppard*, 2004 WL 2850086 (Del. 2004) .......................................................14

*Stambler v. RSA Sec., Inc.*, 2003 WL 252151 (D.Del. Jan. 29, 2003) .............................7

*Tani v. FPL/Next Era Energy*, 811 F.Supp.2d 1004 (D.Del. 2011) ...........................9,12

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ...........................................8

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) .............................................9

## CONSTITUIONS AND STATUTES

10 *Del. C.* §§ 4001-4005 ...............................................................................................15

14 *Del. C.* § 121 ...........................................................................................................13

18 *Del. C.* §§ 6501-6543 ...............................................................................................15

19 *Del. C.* § 1703 .........................................................................................................16

28 U.S.C. § 1367 ...........................................................................................................14

Fed. R. Civ. P. 56(c)(2) ................................................................................................6

## NATURE AND STAGE OF THE PROCEEDINGS

On September 14, 2012, Reginald Millner initiated this matter by filing a complaint against Defendants the State of Delaware Department of Education, Glenda Riedmiller, John Moyer, III, Lillian Lowery, Linda Rogers, Daniel Cruce, Mary Cooke, Michael Stetter, and Mark Murphy. D.I. 1. Millner is suing the individual defendants in their official and individual capacities except Mark Murphy, who is sued only in his official capacity. Millner claims that his termination from the Delaware Department of Education ("DOE") was a result of racial discrimination, a conspiracy to deprive him of his constitutional rights, and retaliation for reporting waste and mismanagement of state property. Millner claims violations of his rights under the First and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Millner also asserts state law claims under the Delaware Whistleblowers' Protection Act, the tort of defamation, and breach of the implied covenant of good faith and fair dealing. Millner is seeking monetary damages, declaratory judgment, and injunctive relief.

On December 17, 2012, Millner amended his complaint to add alleged facts to support his claims. D.I. 3. On January 16, 2013, Defendants answered the amended complaint. The period for discovery ended on April 18, 2014. This is Defendants' opening brief in support of their motion for summary judgment.

## SUMMARY OF ARGUMENT

1.   Under the Eleventh Amendment, state officials acting in their official capacities are entitled to sovereign immunity. Defendants are therefore immune to Millner's claims against Defendants in their official capacities.

2.   To establish a Section 1983 claim for a civil rights violation, a plaintiff must show that the defendant had personal involvement in the alleged wrongs. Millner has not demonstrated any evidence to show that certain Defendants were personally involved in the alleged violation of his constitutional rights. Without proof of the Defendants' personal involvement, Millner's claims against them must be dismissed.

1

3.   As a threshold matter, state officials are entitled to qualified immunity if the plaintiff's allegations are insufficient to establish a violation of a constitutional or statutory right. Millner has not provided any evidence to establish that Defendants violated his constitutional rights, so Defendants are entitled to qualified immunity.

4.   The Court may exercise supplemental jurisdiction over a plaintiff's state law claims if the Court has original jurisdiction over the other claims in a controversy. But if the claims of original jurisdiction are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims. If the Court dismisses Millner's federal claims, it should not exercise supplemental jurisdiction over his state law claims.

5.   The Court does not have personal jurisdiction over a person who has not been properly served according to Rule 4. Dr. Lowery was never served with the complaint or amended complaint. Therefore, the Court does not have jurisdiction to consider Millner's claims against Dr. Lowery, and those claims must be dismissed.

## STATEMENT OF FACTS

### I.   Introduction

This case arises out of the September 2010 decision of Dr. Lillian Lowery, an African-American woman who was then the Cabinet Secretary for the DOE, to terminate the employment of plaintiff Reginald Millner. Defendants' Appendix ("DA") at DA330-3 ¶¶ 2, 3, 12. The decision to terminate Millner, an African-American man, was made based on evidence that Millner had taken materials out of a DOE warehouse and sold them at a local flea market for his own personal profit. Millner did not then (and does not now) deny taking the materials and selling them, but instead argues that (i) the materials had been thrown into a dumpster, (ii) he had permission to take materials from the dumpster, and (iii) other employees in the warehouse were doing it too. After an investigation, the DOE determined that Millner's excuses were not supported by evidence and Secretary Lowery made the decision to terminate his employment. DA332-333 ¶ 12.

Millner did not exercise his right to a post-termination hearing with the Office of Management and Budget, nor did he file any claim against the DOE with the Equal Employment Opportunity Commission ("EEOC"). Rather, he did nothing for two years after he was fired, and then filed this belated suit. The Amended Complaint asserts a dog's breakfast of claims against the Defendants, the central thesis of which appears to be a claim that, notwithstanding the fact that he admittedly took materials from the DOE and sold them for personal gain, other non-minority employees did it too, and firing him and not firing others represents a violation of the Equal Protection guarantee of the Fourteenth Amendment to the United States Constitution.

As will be set forth below, there are a number of defenses to these claims which prevent this case from proceeding any longer, among them sovereign immunity, qualified immunity, failure to exhaust state law remedies, the statute of limitations, and insufficient service of process. But looking beyond these defenses, which alone warrant dismissal of the Amended Complaint, is that there is simply no evidence of race-based discrimination in the decision to fire Millner, nor is there any evidence supporting his various excuses for his conduct. Indeed, taking Millner's employment history into account – which includes a previous admonition for stealing state resources and a warning that any further employment incidents would result in termination of employment – the evidence shows that the DOE gave Millner every opportunity to thrive as an employee, and it was only when he continually breached that trust that Secretary Lowery made the determination that he should be terminated.

## II.  Statement of Facts

Millner began working at the DOE in August 2002. DA1. According to Millner, his job title was "Associate" and he worked in the warehouse for the DOE, where he would "[r]efurbish science kits, deliver and pick up science kits. [He] was in charge of maintaining the Dumpsters [sic] being emptied. [He] was also the lead fork truck

operator, and [he] also did paperwork and computer work." DA248-9.While Millner was generally described as a "hard worker" during his time at the DOE, he periodically would have to be disciplined and placed on improvement plans for various infractions.[1]

A full recitation of Millner's employment history is beyond the scope of this motion, but Defendants will describe one of the more significant incidents here. In 2007, Millner was caught using the DOE's Fuelman Card (a credit card used to purchase fuel for the DOE's fleet of vehicles) for his own personal vehicle. DA280 ("I used a fuel card twice to put gas in my car to go back and forth up there."). After being caught, Millner admitted to the transgression and wrote a letter to the DOE in which he apologized for his actions and asked for leniency in any discipline, citing a family illness that required multiple trips to the hospital. DA20 (Aug. 7, 2007 letter). After an investigation, Millner was suspended without pay for two days and required to pay restitution for his unauthorized use of the Fuelman card. DA21. An August 15, 2007 letter sent to Millner informing him of the DOE's determination made clear that "[a]ny further disciplinary action will result in immediate initiation of termination proceedings." *Id.*

In June and July 2010, several DOE employees, including Glenda Riedmiller (the DOE employee in charge of, among other things, ordering materials to be placed into science kits at the warehouse where Millner worked, DA87) and John Moyer (an education associate in charge of, among other things, curriculum development and the materials resource center, DA158) began to notice that materials were missing from their proper locations in the warehouse. *See generally* DA25. At an August 3, 2010 lunch at Spence's Bazaar, a flea market close to the warehouse, (now Dr.) Moyer and Riedmiller saw what they believed to be certain of the missing warehouse materials for sale at an outdoor table. *Id.* Moyer had previously been told by Millner that his family had a table at

---

[1] *See, e.g.,* DA129 (Dr. Stetter (Millner's supervisor) testifying that "[t]here were times over the period of 2003 to 2010 where I had had to put him on an improvement plan for various infractions, but he was always a hard worker…."); DA277, 279 (after testifying as to a June 2005 written reprimand, "Q. Do you remember what happened during that incident? A. I had a lot of them. No, I don't know.").

Spence's, and that he sometimes sold items there to help make ends meet. *Id.* Concerned about the ramifications of what they had seen, Riedmiller and Moyer returned to their workplace and contacted defendant Michael Stetter, the DOE employee with supervisory authority over Moyer and the warehouse staff, including Riedmiller and Millner. *Id.*

Dr. Stetter was not in the office, and his assistant, Jackie Edge, forwarded the issue along to his supervisor, Dr. Linda Rogers. *See, e.g.,* DA25; DA130. The DOE's HR department was also contacted. Dr. Rogers and Dr. Stetter began investigating the matter, conducting interviews of Millner, Moyer and Riedmiller, and obtaining statements from Riedmiller, Moyer and Edge. *See* DA4, 17-18, 24-25, 27 (interview memoranda and written statements). After consultation with the DOE's legal counsel, they also referred the matter to the Dover Police. DA131, 216.

Millner was arrested on August 20, 2014, and a no-contact order was put in place that prevented him from coming to the warehouse. DA23, 283-4. That same day, Mary Cooke (the DOE's Human Resources Officer) sent Millner a letter indicating that he was being placed on disciplinary leave with pay, pending the results of the DOE's investigation into the allegations. DA23.

On September 1, 2010, the DOE sent Millner a letter indicating that it intended to terminate his employment effective Friday, September 17, 2010. DA29. The letter invited Millner to a "pre-termination meeting" on September 9, 2010, and informed him that he could bring a personal representative with him. *Id.* The meeting was not a formal hearing, but was intended to permit Secretary Lowery to hear Millner's side of the story before making a final decision. DA331 ¶¶ 5-6.

The pre-termination meeting was held as scheduled on September 9, 2010. Millner attended, as did Secretary Lowery, Cooke, and Deputy Secretary of Education Dan Cruce. DA285, 331-333 ¶ 9. At the hearing, Millner admitted to taking DOE materials, but claimed that they had been thrown into the dumpster, and that Riedmiller had given him permission to take them. He also claimed that a lot of material had been

thrown out at the warehouse, and that other employees had also taken DOE materials from the dumpster. DA331-2 ¶ 9. The evidence shows that this was the first time Millner had raised the issue of potential waste at the warehouse, and that he did not raise the issue of potential racial discrimination at this time. DA223-224, 332 ¶ 11; DA68-69.

After the meeting, and based on Millner's claims that others had also taken materials from the warehouse, Ms. Cooke conducted further interviews of Ms. Riedmiller and Leah Mycek, another of Millner's co-workers. DA220-221. Both denied that there was any general practice permitting employees to take materials from the warehouse (whether they had been thrown out or not) and further denied any waste at the warehouse. *Id.*[2]

Secretary Lowery considered the results of these investigations and Millner's work history and made the decision that Millner should be fired. DA332 ¶ 12. The Secretary was the only individual at DOE with the authority to make such a determination. DA330 ¶ 4. Millner was informed of the decision by letter dated September 15, 2010. DA3. The letter informed Millner that if he disagreed with the Secretary's determination, he had a right to request a hearing in front of the Office of Management and Budget. *Id.* Millner did not exercise this right, nor did he ever file a claim against the DOE with the EEOC.

## ARGUMENT

A movant is entitled to judgment as a matter of law if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2). When determining if a genuine issue of material fact exists, "a court must review the evidence and construe all inferences in the light most favorable to the nonmoving party." *Ford v. Unum Life Ins. Co. of America*,

---

[2] *See also* DA96 ("I don't recall him ever asking to take anything."); DA89; *see also* DA202 (DOE warehouse employee, testifying "Q. Did you ever see anyone take materials that were thrown into the dumpster? A. No. I never, I never saw anybody take materials out of the dumpster, so to that question, no.").

465 F.Supp.2d 324, 330 -331(D.Del. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). The reviewing court should not, however, "make credibility determinations or weigh the evidence." *Id.* In order to defeat a summary judgment motion, the nonmoving party must demonstrate that there is "enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *Stambler v. RSA Sec., Inc*., 2003 WL 252151, at *1 (D.Del. Jan. 29, 2003)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "Accordingly, a mere scintilla of evidence in support of the nonmoving party is insufficient for a court to deny summary judgment." *Ford*, 465 F.Supp.2d at 331 (citing *Anderson,* 477 U.S. at 252). "If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." *Stambler*, 2003 WL 252151, at *1 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

## I. Millner's constitutional claims must be dismissed because Defendants are entitled to sovereign immunity.

### A. The Eleventh Amendment protects Defendants from liability in their official capacities.

Generally, states are immune from suits brought by private parties in federal court. *Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99, 102 (D.Del. 2005)(citing *Jamison v. Del.,* 340 F.Supp.2d 514, 516 (D.Del. 2004)). A state's sovereign immunity is not absolute, however, and it can be waived in two ways: (1) the United States Congress can waive a state's sovereign immunity through its Fourteenth Amendment enforcement powers, or (2) a state may consent to a waiver of its sovereign immunity. *Id.* at 102 (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55-57 (1996); *Lavia v. Pa.,* 224 F.3d 190, 195 (3d Cir.2000)). Section 1983 of Title 42 does not provide a clear intent to waive state sovereign immunity, and Delaware has not consented to a waiver with respect to

such claims. *Baker v. James T. Vaughn Corr. Ctr.*, 425 Fed.Appx. 83, 84 (3d Cir. 2011)(citing *Koslow v. Pa.,* 302 F.3d 161, 168 (3d Cir.2002)); *Green,* 229 F.R.D. at 102).

A suit against a state official in his official capacity is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, Defendants in their official capacities are not "persons" for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, they are outside the class of persons subject to liability under 42 U.S.C. § 1983, and this Court lacks jurisdiction over them in their official capacities. Therefore, Millner's constitutional claims against the DOE and against Defendants in their official capacities must be dismissed.

### B. Defendants are entitled to qualified immunity in their individual capacities because Millner has failed to show that they violated his constitutional rights.

#### 1. Plaintiff's Title VII Claims Should Be Dismissed.

It is settled law that, in order to raise claims of employment discrimination under Title VII of the Civil Rights Act of 1964, a plaintiff first has to show that he has exhausted all state law remedies available, including by filing a claim with the EEOC. *See, e.g., Robinson v. Dalton,* 107 F.3d 1018, 1022 (3d Cir.1997) ("[T]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution." (internal quotations omitted)); *Joyner v. School Dist. of Phila.,* 313 F. Supp. 2d 495, 500 (E.D. Pa. 2004) ("It is well settled that as a pre-condition to filing suit under Title VII, a plaintiff must first file charges with the EEOC within 180 days of the alleged discriminatory act." (internal quotations omitted)). At his deposition, while he first exhibited some confusion on the subject (DA276), Millner admitted that he did not file any claim against the DOE with

the EEOC. DA276. ("Q. So you only filed an EEOC complaint against Sam's club? A. Right. Yes. Q. And not the Department of Ed? A. Right. Yes.").[3]

Indeed, not only did Millner not file a claim with the EEOC, he also failed to exercise his right to a formal hearing before the Office of Management and Budget regarding his termination – notwithstanding that his termination letter explicitly notifies him of this right. *See* DA3; DA333 ¶ 13. Simply put, having failed to exercise even basic diligence with respect to the state law remedies available to him, Millner has forfeited his right to proceed with any claims under Title VII. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 (3d Cir. 1997) ("[F]ederal courts lack jurisdiction to hear a Title VII claim, unless the plaintiff has filed a charge with the EEOC." (*citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)); *Carter v. Midway Slots & Simulcast*, 894 F.Supp.2d 529, (D.Del. 2012) ("When a plaintiff fails to exhaust administrative remedies, a court should dismiss the unexhausted claims.").

In addition to the failure to exhaust state-law remedies, to the extent that Plaintiff is pursuing Title VII claims against the individual defendants, those claims should be dismissed as well, as individual employees cannot be held liable pursuant to that title. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996); *Tani v. FPL/Next Era Energy*, 811 F.Supp.2d 1004, 1018 (D.Del. 2011).

### 2. All Defendants Are Entitled to Qualified Immunity.

The doctrine of qualified immunity protects government officials from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies and protects a government official from trial regardless of

---

[3] That testimony is consistent with Millner's responses to interrogatories, where, in response to a question seeking identification of all cases in front of any court or administrative body (including specifically the EEOC) as to which he was a party, Millner identified an EEOC complaint against Sam's Club but did not identify any complaint against DOE. *See* DA47-49.

whether the official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation and citation omitted). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* For that reason, the United States Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (*citing Hunger v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

The court utilizes a two-step test set forth by the United States Supreme Court in *Saucier* to resolve a claim of qualified immunity. *Pearson*, 555 U.S. at 232. "First, a court must decide whether the facts that a plaintiff has … shown … make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citations omitted).

As a threshold matter, all Defendants are entitled to the protections of qualified immunity because the evidence has not shown that any constitutional right has been violated. Millner admits that he took property from the DOE warehouse and sold it for his own personal gain. DA331-2 ¶ 9. Among the items that Millner took and sold were rubbing alcohol, markers, corn starch, talc, screwdrivers, hammers, flashlights, extension cords, balloons, batteries, tinfoil cups, construction papers, spoons and a stethoscope. *See generally* DA259-261. Millner has never denied that he took the items and sold them, but claimed that the items were in the dumpster, he had permission to take them and that others did it too. *See, e.g.,* DA331-2 ¶ 9.

When the DOE became aware of Millner's actions, it initiated an investigation and reported his alleged theft to the Dover Police. DA182, 184, 215-216. Millner was arrested and a "no-contact" order was entered that prevented him from appearing at his place of employment. DA283-284 (recounting the arrest), DA284 (discussing the

10

no-contact order); DA23 (suspension letter discussing the no-contact order); DA217 (discussing the arrest and ensuing decision to place Millner on administrative leave). As set forth above, the DOE conducted a thorough investigation and determined that Millner's alleged excuses were insufficient and not supported by the available evidence, even going so far as to conduct additional interviews in response to concerns raised by Millner at his pre-termination meeting.

Following this investigation, Secretary Lowery – the only individual at DOE with authority to terminate an employee – made the decision that Millner should be fired. DA332-3 ¶ 12. Other than Millner's say-so, there is no evidence indicating or even implying that the decision to terminate Millner was made based on his race, in retaliation for any protected activities, or that he was treated differently than any similarly situated co-workers.[4] Indeed, at no point did the DOE ever uncover substantiated evidence that any other employee took materials out of the warehouse and sold them for personal benefit, and no such evidence has arisen during discovery

---

[4] With respect to Millner's allegations of retaliation, there is no substantiated evidence that he made *any* allegations of waste at the warehouse prior to his pre-termination meeting, or that he made allegations of racial discrimination prior to the filing of this lawsuit. DA330-333 ¶ 11; DA276-277 (Millner testifying that he was "not sure" whether he had ever mentioned potential racial discrimination in his grievance about Ms. Riedmiller or letter about Dr. Stetter); DA287 ("So you didn't file a grievance about your trips to the inner city? A. No. Q. And you never filed an EEOC complaint about that? A. No."); DA219 ("Q. Do you have any recollection of [Millner] ever stating [prior to August 2010] that he thought he was being discriminated against because of his race? A. No."); *but see* DA290 (alleging that he informed Linda Rogers and Mike Stetter of the potential waste at the warehouse when he was first interviewed in connection with the investigation that he had sold DOE materials at Spence's Bazaar); *compare* DA132-133 (testifying that the only time Millner had raised the issue of being "singled out" had occurred years earlier, and had been addressed through mediation); *id.* at 27-28 (describing the interview conducted by Linda Rogers of Millner); DA183 (describing the interview, with no mention of waste and concluding that "I do not recall [Millner] … telling us that anyone else was taking materials from the warehouse"); DA24 (Dr. Rogers' summary of the interview, no mention of waste). There being no evidence of any protected conduct that Defendants could have retaliated against, the claims of retaliation must fail. *See, e.g., Mosaka-Wright v. LaRoche College*, 2012 WL 3060151, at *3 (W.D.Pa. July 25, 2012) ("Plaintiff has not established that she engaged in a protected activity before she learned her contract would not be renewed and therefore, she cannot establish a *prima facie* case of retaliation."); *see also, e.g., Barber v. CSX Distribution Svcs.*, 68 F.3d 694, 702 (3d Cir. 1995) (complaints about unfair treatment generally or other vague assertions are insufficient to establish "protected conduct" necessary to support a retaliation claim).

here.[5] Rather, the decision to terminate Millner was made because the available evidence suggested that he had been taking materials out of the warehouse and selling them for his own profit. DA332-3 ¶ 12.

Simply put, the evidence does not support a finding of a constitutional violation. And even if there could be such a violation extrapolated from these facts, Defendants are still entitled to qualified immunity because the constitutional right in question cannot said to be so clearly established as to put the officials on notice that their actions would violate the constitution. The DOE obtained *evidence* that Millner was selling items from the warehouse for personal gain. They conducted an investigation. That investigation confirmed their findings and did not support any of Millner's attempted explanations. Defendants are unaware of any case law suggesting that firing an employee in these circumstances is a violation of the Constitution, much less a violation of a "clearly established" right thereunder.[6] Indeed, even if Secretary Lowery was wrong in her ultimate conclusions – and there is no evidence to suggest that she was – qualified immunity still operates as a bar to further proceedings. *See, e.g., Pearson*, 555 U.S. at 231 (internal quotation and citation omitted) (holding that qualified immunity applies and protects a government official from trial regardless of whether the official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact").

---

[5] The only other potential instances of employees taking materials from the warehouse that have arisen in discovery are (i) another warehouse employee taking scrap pieces of wood home to burn in a bonfire, (ii) a situation where a number of bowls were allegedly being thrown away and were given to a number of employees, and (iii) Millner's allegation (denied my Ms. Riedmiller) that Glenda Riedmiller took a single board game that was scheduled to be thrown away and sent it to her nephew. DA96, 220-221. There is no allegation – much less evidence – that any other employee took materials from the warehouse in anything approaching the scope of materials admittedly taken by Millner, nor is there any allegation or evidence that any other employee sold DOE materials for their own personal gain.

[6] Similarly, other than Millner's bare allegation, there is no evidence suggesting any agreement or understanding among the Defendants to violate his constitutional rights or to otherwise discriminate against him. He has therefore failed to establish any violation of 42 U.S.C. § 1985 or Delaware state law with respect to his conspiracy claims. *See Shipley v. First Federal Sav & Loan Ass'n of Delaware*, 703 F.Supp. 1122, 1128-29 (D.Del. 1988) (citation omitted) ("Assertions of a conspiracy, unsubstantiated by facts, are insufficient to overcome the defendants' motions for summary judgment."); *see also Tani*, 811 F.Supp.2d at 1022.

## II. Millner fails to establish a constitutional claim under Section 1983 against the Defendants because he cannot show that they were personally involved in the alleged violation of his rights.

To establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the plaintiff was deprived of a right or privilege secured by the Constitution or the laws of the United States. *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985)(citing *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)). To support a claim for a civil rights violation, a plaintiff must show that the defendant had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1995, 1207 (3d Cir. 1988). Specifically, the plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pa. v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981), *rev'd on other grounds*, 659 F.2d 306 (3d. Cir. 1981), *cert. denied*, 458 U.S. 1121 (1982). The plaintiff must assert facts that show the defendant's personal involvement in the alleged deprivation of the plaintiff's rights. *Rahim v. Holden*, 831 F. Supp.2d. 845, 848 (D.Del. 2011)(citations omitted).

The underlying basis for the majority of Millner's constitutional claims is the termination of his DOE employment. Count I, II, V, IX, XI. Millner alleges a variety of theories as to why he was terminated, including racial discrimination and related retaliation, reporting alleged waste and related retaliation. But there is no evidence that anyone but Dr. Lowery had the authority to terminate Millner. Delaware law provides that only the DOE Cabinet Secretary has authority to terminate an employee. 14 *Del. C.* § 121(a)(6). And, in fact, Dr. Lowery alone made the decision to terminate Millner's employment. DA332 ¶ 11. Millner's complaints do not allege any facts, nor is there any evidence to demonstrated that Defendants Riedmiller, Moyer, Rogers, Cruce, Cooke, Stetter, or Murphy were personally involved in Millner's termination. Therefore, Millner fails to establish a "'plausible nexus' or 'affirmative link'" between those Defendants, the

13

termination of his employment, and the alleged deprivation of his constitutional rights, and his claims against them must be dismissed. *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d. Cir. 2010)(quoting *Hedges v. Musco,* 204 F.3d 109, 121 (3d Cir. 2000)).

### III. The Court should decline to exercise supplemental jurisdiction over Millner's state law claims against Defendants.

A district court may decline to exercise supplemental jurisdiction over state law claims if: (1) the claim raises a novel or complex issue of state law, (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367.

In addition to his federal constitutional claims, Millner makes state law claims against the Defendants, alleging that they violated the Delaware Whistleblowers' Protection Act, and state tort and employment law. The Court should decline supplemental jurisdiction over these claims to the extent that the Court dismisses Millner's federal law claims, and only the state law claims against the Defendants remain.

### A. State Tort Claims Act.

Under Delaware law, the doctrine of sovereign immunity provides that the State of Delaware, including its agencies, can only be sued by consenting to, or by an *express* act of the General Assembly. *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004)(citations omitted). In order to establish a waiver of the State's immunity, a plaintiff must demonstrate that "'(1) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and (2) the State Tort Claims Act does not bar the action.'" *DHSS v. Sheppard*, 2004 WL 2850086, at *1 (Del. 20014) (*quoting Pauley*, 848 A.2d at 573).

Millner's state law claims cannot be maintained because he cannot overcome the first prong of the sovereign immunity test. There is no statutory waiver of the State's

14

sovereign immunity applicable for plaintiff's claims. The State Insurance Coverage Act, 18 *Del. C.* §§ 6501-6543, does not provide a statutory waiver of sovereign immunity because there is no evidence that the State is insured for Millner's claims.

Notwithstanding the absence of a statutory waiver of sovereign immunity, Millner's complaint cannot overcome the second prong of the foregoing test, the immunity from suit created by the State Tort Claims Act, 10 *Del. C.* §§ 4001-4005, which provides the State and State officials with an additional shield from civil liability by limiting the State's liability when sovereign immunity has been waived by another means. *Sprout v. Ellenburg Capital Corp.*, 1997 WL 716901, at *4 (Del. Super. Aug. 26, 1997)(*citing Doe v. Cates*, 499 A.2d 1175, 1176-77 (Del. 1985)). Employees who are performing their official duties, which require "a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion," have immunity if they are acting in good faith and without gross or wanton negligence. 10 *Del. C.* § 4001.

There is no evidence that any of the Defendants acted in bad faith or with gross or wanton negligence. Riedmiller and Moyer discovered the missing items from the warehouse, which led them to Spence's Bazaar where Millner's family was selling items from the science warehouse. DA100; DA161. Millner does not deny this. DA258-262. Riedmiller and Moyer reported this discovery to their supervisor, Dr. Stetter, and complied with the DOE investigation. DA100; DA162-163; DA17.  Drs. Stetter and Rogers used their discretion to conduct a fact-finding investigation and prepare a report. DA130-131; DA182-184. In her role as Human Resources Officer, Mary Cooke investigated the allegations against Millner and consulted with Dr. Lowery about disciplinary actions, including termination. DA215-217. Cruce attended the pre-termination meeting but did not advise Dr. Lowery about Millner's termination. DA69-72. There is no evidence that Mark Murphy was involved in the alleged incident. Finally,

Dr. Lowery, an African-American woman, was the only person with the authority to terminate Millner, and she alone made that decision. DA332 ¶ 11. There is no evidence that Dr. Lowery acted in bad faith or with gross or wanton negligence.

### B.  Delaware Whistleblowers' Protection Act.

The Delaware Whistleblowers' Protection Act protects employees from discharge, threat[s], or other discrimination "regarding the employee's compensation, terms, conditions, location, or privileges of employment" after that employee, *inter alia*, "reports a violation, which the employee knows or reasonably believes has occurred or is about to occur." 19 *Del. C.* §1703(4). The employee bears the burden of proving that the "primary basis for the discharge, threats, or discrimination alleged to be in violation of this chapter was that the employee undertook an act protected pursuant to § 1703 of this title." § 1708. Regardless, a government employee cannot litigate whistleblower actions against individual State employees. *Jordan v. Town of Milton*, 2013 WL 105319, at *12 (D.Del. Jan. 3, 2013)(citations omitted).

Millner alleges that the Defendants discharged and otherwise discriminated against him because he reported waste at the science warehouse. D.I. 3,¶¶ 92-96. First, Millner's claims against the individual defendants are barred, and they must be dismissed. Second, there is also no evidence that Millner was terminated because he reported alleged issues about the financial management, accounting standards, inventory, mismanagement, or waste at the science warehouse. Millner only reported those issues after DOE began investigating him for taking items from the science warehouse without authorization and selling them for his personal financial benefit at Spence's Bazaar.

At his deposition, Millner testified that the first time he reported the alleged waste was at the meeting with Linda Rogers and Mike Stetter in which they questioned him about the missing items from the warehouse. DA252. Other than his bare allegation, there is no evidence that he actually did so. *See supra* n.5. Rather, the evidence suggests that

16

the only time he even mentioned waste at the science warehouse was to Dr. Lowery at his pre-termination meeting. DA290, DA332 ¶ 11. Significantly, Dr. Lowery was also the only defendant with the authority to terminate Millner. DA330 ¶ 4. But Millner never made any statements about the alleged waste at the science warehouse until he was confronted with taking items from the warehouse without authorization and selling them for his own financial gain. These self-serving excuses cannot be construed as making the type of reports that are protected by the Delaware Whistleblower Protection Act. Millner has not presented any evidence that his employment was terminated because of his statements regarding waste at the warehouse; therefore, his Whistleblower claims must be dismissed.

### C. Defamation.

Under Delaware law, in order to state a defamation claim, "a plaintiff must satisfy five elements: (1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Kabbaj v. Google, Inc.*, 2014 WL 1369864, at *5 (D.Del. April 7, 2014)(quoting *Esposito v. Townsend*, 2013 WL 493321, at *7 (Del. Super. Feb. 8, 2013)). But there are defenses to defamation claims, including the absolute defense of truth. *Jordan*, 2013 WL 105319, at *15 (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1155 (Del.1981)). Moreover, "a statement of fact will not be deemed libelous if it is 'substantially true.'" *Id.* (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del.1998)).

Millner alleges that Defendants Riedmiller, Moyer, Stetter, and Rogers defamed him by reporting that he stole warehouse materials, creating investigation reports, and recommending his termination. D.I. 3, ¶¶ 117-120. The DOE investigation of Millner and the missing items from the warehouse ended when Millner was arrested by Dover Police Department on August 20, 2010. DA217. Millner was placed on disciplinary leave with

17

pay, and DOE commenced discussions about Millner's termination. DA132, 217. The incident that led to Millner's termination – the discovery that he had taken items from the science warehouse without authorization and sold them for his personal financial gain – was first brought to light on August 3, 2010, when Riedmiller and Moyer reported to Stetter's secretary that they observed someone, who appeared to be Millner's father-in-law, selling science warehouse items at Spence's Bazaar. DA4. The investigation of this matter included interviews conducted by Stetter and Rogers of Millner, Riedmiller, and Moyer. DA24, DA17, 18, 24.Those interviews concluded by August 5, 2010, and that information was sent to Cooke and then memorialized in memos, dated August 25, 2010. DA135, 183.

Defendants' statements and reports about the incident are substantially true. Millner admitted that Riedmiller and Moyer's observations were correct –items for sale at his in-laws' table at Spence's Bazaar included items that he took from the science warehouse. DA4, 17, 18, 24. The parties' only disagreement is whether Millner had permission to take those items. In addition, there is no evidence that any of these Defendants recommended that Millner be terminated. DA128, 184. This is insufficient to raise a defamation claim, and it must be dismissed.

### D.  Breach of the implied covenant of good faith and fair dealing.

In Delaware, employees are hired "at will," and generally, they may be dismissed "without cause and regardless of the motive." *Mulrooney v. Corporation Service Co*., 2013 WL 1246769, at *9 (D.Del. March 27, 2013)(quoting *E.I. DuPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 437, 440 (Del.1996)). But Delaware law also provides that every employment agreement contains an implied covenant of good faith and fair dealing that provides limited exceptions to the at-will doctrine. *Id.* In Counts VII and VIII, Millner relies on the at-will exceptions for: (1) termination in violation of public policy, and (2) falsification or manipulation of employment records to create fictitious

18

grounds for termination. *Id.* at *9-10 (quoting *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F.Supp.2d 791, 798 (D.Del.2012)). Millner argues that Delaware has a public policy interest in encouraging the reporting of waste and mismanagement of state owned property by employees. These claims are duplicative of Millner's Whistleblower and defamation claims. As such, as discussed above, Millner's good faith covenant claims should also be dismissed because there are no genuine issues of material fact to support them.

### IV. The statute of limitations is an absolute bar to Millner's state law tort claims and constitutional claims of racial discrimination in the workplace.

The relevant state statute of limitations for most tort claims in Delaware is two years. *Carroll v. ABM Janitorial Services-Mid Atlantic, Inc.*, 2012 WL 3870341, at *2 (D.Del. Sept. 5, 2012)(citing 10 Del. C. § 8119). Because Section 1983 does not provide a statute of limitations, the applicable statute of limitations is the "state's statute of limitations governing personal injury claims." *Daoud v. City of Wilmington*, 894 F.Supp.2d 544, 557 (D.Del. 2012)(citing *Wilson v. Garcia,* 471 U.S. 261, 276–78 (1985); *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998)). Millner filed his original complaint on September 14, 2012, one day shy of two years from the date that Dr. Lowery terminated his employment. D.I. 1. But many of Millner's claims are related to events that occurred before he was terminated. Count III alleges that Millner experience racial discrimination in the workplace. D.I. 3 ¶¶ 82-84. Despite the fact that Millner never reported the discrimination alleged in the amended complaint, those incidents predate September 14, 2010, and they are time-barred. DA287-289.

In Counts IV, X, and XI, Millner alleges that certain Defendants conducted a "sham investigation" into the allegations against him that constituted conspiracy, defamation, and neglecting to prevent interference of his civil rights. The latest documentation of the investigation into the items missing from the science warehouse is dated August 25,

2010, (*See supra* Part III.C) and as such, any related claims are time-barred, and must be dismissed.

### V. The Court lacks personal jurisdiction over Defendant Lillian Lowery, and all of Millner's claims against her must be dismissed.

All of Millner's claims against Dr. Lowery, in both her official and individual capacities, should be dismissed because he has failed to effect service upon her in accordance with the Federal Rules of Civil Procedure. *Ayres v. Jacobs & Crumplar,* 99 F.3d 565, 569-70 (3d Cir. 1996) (citation omitted). Dr. Lowery testified that she was never served with a copy of the complaint or the amended complaint. DA333 ¶15. And there is no other evidence that Millner ever served Dr. Lowery with either the complaint or the amended complaint. Therefore, Millner's claims against her must be dismissed for lack of personal jurisdiction.

## CONCLUSION

Defendants, State of Delaware Department of Education, Glenda Riedmiller, John Moyer, III, Lillian Lowery, Linda Rogers, Daniel Cruce, Mary Cooke, Michael Stetter, and Mark Murphy, respectfully request that this Honorable Court grant their motion for summary judgment and dismiss Reginald Millner's claims against them. As a matter of law, there are no genuine issues of material fact to support any of Millner's claims, and the Court should decline to exercise supplemental jurisdiction over Millner's state law claims.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Devera B. Scott*
Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302) 257-3218
Devera.Scott@state.de.us

*/s/ Scott W. Perkins*
Scott W. Perkins, ID No. 5049
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Scott.Perkins@state.de.us

*Attorneys for Defendants, State of Delaware*
*Department of Education, Glenda*
*Riedmiller, John Moyer III, Lillian Lowery,*
*Linda Rogers, Daniel Cruce, Mary Cooke,*
*Michael Stetter, and Mark Murphy*

Dated:  May 14, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2014, I filed *Defendants' Opening Brief in Support of their Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I further certify that on May 14, 2014, I served plaintiff via CM/ECF.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Devera B. Scott*
Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302)739-4636
devera.scott@state.de.us