**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REGINALD MILLNER,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF DELAWARE DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 12-1137-GMS |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Devera B. Scott*
Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302) 257-3218
Devera.Scott@state.de.us

*/s/ Scott W. Perkins*
Scott W. Perkins, ID No. 5049
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Scott.Perkins@state.de.us

*Attorneys for Defendants, State of Delaware Department of Education, Glenda Riedmiller, John Moyer III, Lillian Lowery, Linda Rogers, Daniel Cruce, Mary Cooke, Michael Stetter, and Mark Murphy*

Dated: July 10, 2014

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ........................................................................................................ 1-9

I. Mr. Millner's constitutional claims must be dismissed because Defendants are immune from suit.

II. Mr. Millner's Title VII claims are barred, and he has not made out a prima facie case of retaliation, bias or discrimination.

III. Mr. Millner has not established a claim under the Delaware Whistleblowers' Protection Act.

IV. The statute of limitations is an absolute bar to Mr. Millner's state law tort claims and constitutional claims of racial discrimination in the workplace.

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001) ....................7

*Blanchard v. Gallick*, 448 Fed. Appx. 173 (3d Cir. 2011) ..........................................................8

*Genty v. Resolution Trust Corp*., 937 F.2d 899 (3d Cir. 1991) ......................................................9

*Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99 (D. Del. 2005) ..........................................4

*Jordan v. Town of Milton*, 2013 WL 105319 (D.Del. Jan. 3, 2013)...............................................8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..........................................................4

*Mosaka-Wright v. LaRoche College*, 2012 WL 3060151 (W.D.Pa. July 25, 2012)........................5

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 (1st Cir. 2000) ..........................7

*Tillman v. Pepsi Bottling Group, Inc.*, 538 F.Supp.2d 754 (D.Del. 2008) ...................................10

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)..........................................................4

**CONSTITUIONS AND STATUTES**

19 *Del. C.* § 1708 ..........................................................................................................................8

Fed. R. Civ. P. 56(e) .......................................................................................................................7

**ARGUMENT**[1]

At best, Mr. Millner's answering brief contains conclusory statements that are unsupported by the record evidence. At worst, his brief misstates the record in an attempt to manufacture inconsistencies to cast doubt on the Defendants' deposition testimonies. Mr. Millner goes so far as to suggest that these alleged inconsistencies should result in the drastic measure of excluding or disregarding their testimonies.

Some examples of the misstatement of the record include Mr. Millner's claim that Glenda Riedmiller singled him out based on his race because she always assigned him to make deliveries into Wilmington's inner city, and she feared the inner city herself. (D.I. 30 at 12). In fact, Ms. Riedmiller testified that she was not afraid to go into Wilmington.

> Q: Did you ever go to Wilmington?
> A: By myself?
> Q: To deliver?
> A: Yes.
> Q: By yourself?
> A: No.
> Q: With anyone else?
> A: Yes.
> Q: Now, when you said "by yourself," when I asked "by yourself?" and you said "no," your face lit up like your were scared. Are you afraid of the inner city of Wilmington?
> A. **Oh, no.**
> Q: When you rode with Reggie, did you ever indicate to him that you were concerned about going into the inner city yourself?
> A: **No. I was never afraid.** D.I. 26 at 102, 57:9-21, 58:14-17 (emphasis added).

Ms. Riedmiller further explained that she has no sense of direction and would get lost when she drove to Wilmington, so she would go with either Leah Mycek or Mr. Millner. D.I. 26 at 102, 58:4-13. Any insinuation that Ms. Riedmiller sent Mr. Millner into the inner city of Wilmington because of his race, and because she was afraid – purportedly

[1] In his answering brief, Mr. Millner concedes that Dr. Lowery should be dismissed from this matter, and he agrees to dismiss Counts IV, VII, VIII, IX, X, and XI of the amended complaint. (D.I. 30 at 10 n.1,2). Therefore, Defendants will not address any related issues in their reply brief.

for discriminatory reasons – must be disregarded. In addition, Mr. Millner's claims that he was the only person to drive into Wilmington are disputed by Ms. Riedmiller. She explained that Ms. Mycek, who worked in Wilmington for ten years, was familiar with the area and would frequently make deliveries there with Mr. Millner. D.I. 26 at 102, 57:1-8. Moreover, following Mr. Millner's admitted theft of DOE property via his use of the DOE's Fuelman card to add fuel to his personal vehicle, Mr. Millner was suspended from driving the state van for six months to a year. D.I. 27 at 169, 176:16-22. Mr. Millner's statements are not supported by any evidence, and they are just plain wrong.

Mr. Millner's answering brief also makes the unsupported and misquoted statement that "hammers were thrown in the dumpster because the heads were falling off of them." D.I. 30 at 13. He cites Sheila Kay-Lawrence's deposition testimony to support this statement. But, in fact, Ms. Kay-Lawrence testified that she did not see anyone throw the hammers in the dumpster.[2] ("Q: Did you see anyone throw the hammers out into the dumpsters? A: I saw them take them out to the platform. But in the dumpster, I did not see that.") D.I. 31 at 45, 23:21-24-2.

Mr. Millner's answering brief also makes statements that are misleading because they imply that there is some supporting record evidence where there is none. For example, Mr. Millner states that in the Spring and Summer of 2010, "[T]he inventory system was changing over to a computer based system, and the warehouse was more full than usual." D.I. 30 at 13. But Mr. Millner provides no support for this statement. Likewise, he states that "a number of employees…took home items which were thrown in or destined to be thrown in the trash at the warehouse. DI 30, at 13. No one (other than Mr. Millner) testified that they took things from the dumpster.

[2] Ms. Kay-Lawrence testified that she saw items that were placed on the warehouse docks, but she never knew their final destination. A science driver could be picking them up, or they could have been thrown away. But she never saw anything thrown in the dumpster, and she had no personal knowledge of what items were thrown in the dumpster. D.I. 31 at 42, 12:5-17.

Defendants admit that the empty black and white cardboard science kit boxes, which were not science kit supplies, were available for employees to take. On one occasion, employees were offered blue bowls to take home, and Ms. Mycek took home some scraps of wood. But unlike Mr. Millner, on those rare occasions, the employees had permission to take those items (*see* D.I. 31 at 28, 26:1-4, 27:13-28:4), and more importantly, no one took the number of items that Mr. Millner was selling at Spence's Bazaar. Mr. Millner testified that the items he offered for sale at Spence's Bazaar included the following things taken from the warehouse: rubbing alcohol, markers, cornstarch, talc, screwdrivers, hammers, flashlights, extension cords, balloons, batteries, tinfoil cupcake tins, construction paper, spoons, and stethoscopes. D.I. 27 at 139-143. There is no evidence that Mr. Millner had permission to take these items, and there is no evidence that anyone else took these items from the warehouse without authorization to sell for their own personal financial gain.

Mr. Millner also delves into his employment record and cites unrelated, and stale-dated incidents that he admits are not related to his claims.[3] These are red herrings and should be disregarded because they are intended to mask the fact that there is no evidence to show that: (Count I, III) the Defendants discriminated against Mr. Millner based on his race; (Count II, V) the Defendants retaliated against Mr. Millner because he complained about racial discrimination; (Count V) the Defendants retaliated against Mr. Millner for reporting waste at the warehouse; and (Count VI) the DOE terminated Mr. Millner in violation of the Delaware Whistleblower Act because he reported waste at the warehouse.

[3] Millner admits that he included incidents that prior to the discovery at Spence's Bazaar as "background, not as the complaints/petition upon which Plaintiff is suing," and that his claims about race discrimination and waste at the warehouse are based on statements he made after and during investigation and pre-termination meeting. (D.I. 30 at 12, n.3).

**I. Mr. Millner's constitutional claims must be dismissed because Defendants are immune from suit.**

It is well accepted that states and state officials in their official capacity are immune from liability for monetary damages for suits brought by private parties in federal court. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99, 102 (D. Del. 2005)(citing *Jamison v. Del.,* 340 F.Supp.2d 514, 516 (D. Del. 2004)). As such, Mr. Millner's constitutional claims for monetary damages against the DOE and against the individual Defendants in their official capacities must be dismissed.

Mr. Millner also argues that the individual Defendants in their official capacities may be liable for prospective injunctive relief. Defendants do not dispute that general statement, and in this case, prospective injunctive relief would be limited to Mr. Millner's request for reinstatement of his DOE employment. But because Mr. Millner has failed to establish a genuine issue of material fact that any of the Defendants violated his constitutional rights, his request for prospective injunctive relief fails.

**II. Mr. Millner's Title VII claims are barred, and he has not made out a prima facie case of retaliation, bias or discrimination.**

As an initial matter, Mr. Millner does not respond to Defendants' argument that his Title VII claims should be dismissed for failure to pursue his claims with the Equal Employment Opportunity Commission ("EEOC"). *See* D.I. 25 at 12-13. This is not a curable defect. Indeed, the Supreme Court case cited by Plaintiff as providing the appropriate framework for analyzing his claims makes clear that pursuing discrimination claims in the EEOC is a "jurisdictional prerequisite" to a court's consideration of Title VII claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973) ("Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the [Equal Employment Opportunity] Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue.");

*see* D.I. 30 at 20. It is not disputed that Plaintiff never filed such a case with the EEOC, and his Title VII claims should therefore be dismissed at the outset.

Even if the Court were to consider Plaintiff's arguments – and to be clear, it should not – the Answering Brief does not save them from dismissal. Plaintiff concedes that Defendants are entitled to summary judgment unless he is able to point to some evidence in the record from which a factfinder could reasonably determine that Plaintiff was not fired for taking DOE materials and selling them for personal gain, but was instead fired because of racial discrimination or retaliation. D.I. 30 at 21 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). He has provided no such evidence. Indeed, even his *prima facie* case fails. As Plaintiff describes it, his "simple" prima facie case is that he "complained about race discrimination and government waste in accounting for science kit and other materials at the DDOE warehouse. He took home items which were designated as trash. He was investigated – albeit poorly and in bad faith – then ultimately fired. Despite his explaining that white employees took DDOE property designated as trash off the premises and kept it, they were not investigated or fired like Plaintiff." D.I. 30 at 20 n.12.

As set forth in more detail in the Opening Brief, this story fails for lack of evidence. The evidence shows that Plaintiff never complained about racial discrimination or allegations of waste until his pre-termination meeting (for the allegations of waste) and the filing of this lawsuit (for the claims of racial discrimination). D.I. 25 at 15 n.4; *Mosaka-Wright v. LaRoche College*, 2012 WL 3060151, at *3 (W.D.Pa. July 25, 2012) ("Plaintiff has not established that she engaged in a protected activity before she learned her contract would not be renewed and

therefore, she cannot establish a *prima facie* case of retaliation."). Nor has Plaintiff identified any other employee, of any race, who is alleged to have taken anywhere near the scope of items that he admittedly took, or any employee who then sold those items for personal gain. D.I. 25 at 15-16; *see also* D.I. 27 at 139-143 (Mr. Millner admitting that he took and sold rubbing alcohol, markers, corn starch, talc, screwdrivers, hammers, flashlights, extension cords, balloons, batteries, tinfoil cups, construction paper, spoons and a stethoscope); D.I. 30 at 13-14 (alleging that employees were permitted to take home empty cardboard boxes, that Ms. Riedmiller once took a board game, that Ms. Riedmiller, non-party Keith Wagner and Plaintiff once took blue bowls, and that another non-party employee, Leah Mycek, once took discarded pieces of wood home to burn); D.I. 30 at 22 n.15 (admitting that to be a proper comparator, "the acts of non-minority employees must be of 'comparable seriousness' [to the misconduct attributed to the plaintiff] if the failure to discharge those employees is being proffered as proof of discriminatory intent" (citation omitted)).[4]

Plaintiff's argument that biased non-decisionmakers tainted the process fares no better. D.I. 30 at 22-23. As an initial matter, the doctrine is one that, if applicable, would

---

[4] Plaintiff appears to concede that the weight of the evidence is strongly against him, as his argument relies on his assertion that because he purports to have identified certain inconsistencies in Defendants' testimony the Court (or a future factfinder) should entirely disregard the testimony of all of the Defendants. D.I. 30 at 21. This is both absurd and telling. It is absurd because, despite claiming that there is a "plethora" of such "inconsistencies, implausibilities, contradictions, weaknesses and incoherencies," Plaintiff does not specifically identify any. *Supra* at pp. 1-3. Rather, a review of the record reveals that Defendants' testimony is consistent, and any inconsistencies are of the sort that would be expected to arise due to Plaintiff's leisurely approach to this litigation and the fact that nearly four years had passed between the time of the challenged conduct and Defendants' depositions. And it is telling because it is a recognition that the only evidence Plaintiff has in his favor on the material facts at issue is his own, unsupported say-so. Needless to say, the case cited by Plaintiff on this point is entirely inapposite. D.I. 30 at 12 n.14.

permit a plaintiff to maintain *Title VII* claims against an employer where there is evidence that a biased non-decisionmaker "influenced or participated in the decision to terminate." D.I. 30 at 22 (quoting *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001). As set forth above, however, Plaintiff has failed to satisfy the jurisdictional prerequisites of asserting a Title VII claim, so the action must fail. *Supra* at p. 4. More to the point, however, is that Plaintiff does not cite any evidence of bias on the part of *any* party or non-party to this action. Indeed, his argument on this point cites only to legal principles, without a single record citation. D.I. 30 at 22-23. Conclusory allegations unsupported by the factual record are insufficient to defeat a motion for summary judgment. Fed. R. Civ. P. 56(e). And in any event, the record is undisputed that no employee made a recommendation to Dr. Lowery on which she acted; she and she alone made the decision to terminate the Plaintiff. D.I. 25 at 17-18.[5]

[5] The only Defendants that Plaintiff even claims have exhibited racism are his former immediate supervisor, Dr. Stetter, and his co-worker Glenda Riedmiller. D.I. 30 at 2-3. The lack of evidence supporting these allegations means that they do not survive summary judgment. Even if they were considered true, however, there is no evidence suggesting that Dr. Stetter or Glenda Riedmiller controlled or exerted influence over Dr. Lowery sufficient for their alleged bias to be considered to have tainted Dr. Lowery's concededly bias-free decision to terminate Mr. Millner's employment. *See, e.g., Abramson*, 260 F.3d at 286 (citing evidence that the decision-maker had sought input on the decision to fire an employee before making his determination, and concluding that "[u]nder our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate" (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker … it is proper to impute their discriminatory attitudes to the formal decisionmaker."); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) (stating that "discriminatory comments … made by … those in a position to influence the decisionmaker" can be evidence of pretext) (additional citations omitted)).

**III. Mr. Millner has not established a claim under Delaware Whistleblowers' Protection Act.**

Mr. Millner does not counter Defendants' arguments that he failed to establish a claim under the Delaware Whistleblowers' Protection Act with any evidence or legal argument. Instead, Mr. Millner merely makes the unsupported, conclusory statement that his termination violated the Act because he reported waste at the warehouse during the investigation of the Spence's Bazaar incident and his pre-termination meeting with Dr. Lowery. This is not sufficient. *Blanchard v. Gallick*, 448 Fed. Appx. 173, 176 (3d Cir. 2011)(quoting *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972)) ("Conclusory statements ... [are] insufficient to avoid summary judgment.").

First, Mr. Millner does not dispute that individual Defendants cannot be held liable under the Act, and, therefore, any claims against them must be dismissed. *See Jordan v. Town of Milton*, 2013 WL 105319, at *12 (D.Del. Jan. 3, 2013)(citations omitted). Second, Mr. Millner has failed to satisfy his burden of proving that the DOE's primary basis for terminating his employment was because he reported a violation that is protected by the Act. *See* 19 *Del. C.* § 1708. The evidence shows that in August 2010, Mr. Millner was investigated for taking items from the warehouse without authorization and selling them for his personal financial gain at Spence's Bazaar. As a result of that incident, and following a pre-termination meeting with Dr. Lowery, Mr. Millner's DOE employment was terminated. Dr. Lowery testified that following that pre-termination meeting, she alone decided to terminated Mr. Millner's employment because he took materials from the science warehouse without authorize and sold them for his personal benefit. D.I. 27 at 213. Dr. Lowery specifically denied that her decision was based on any alleged claims that Mr. Millner made about racial discrimination or waste. *Id.*

Mr. Millner does not dispute that prior to August 2010, he never reported waste at the warehouse. His whistleblower claim fails because there is no evidence that DOE terminated Mr. Millner in violation of the Act. Therefore, because there are no genuine

issues of material fact to support Mr. Millner's whistleblower claims, they must be dismissed.

**IV. The statute of limitations is an absolute bar to Mr. Millner's state law tort claims and constitutional claims of racial discrimination in the workplace**.

The parties agree that Delaware's two year personal injury statute of limitations applies to Section 1983 claims. The parties also agree that "the accrual of section 1983 claims establishes that the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp*., 937 F.2d 899, 919 (3d Cir. 1991)(citing *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 197, n.16 (3rd Cir.1984)). Defendants disagree with Mr. Millner's argument that the case law governing the accrual of a Title VII claim applies to Mr. Millner's Section 1983 claims.

As such, Mr. Millner's constitutional claims of racial discrimination and retaliation for complaining about racial discrimination and waste at the warehouse accrued when he knew about them or should have known about him. At a minimum, Mr. Millner admits that he complained about these issues during the August 2010 investigation and September 9, 2010 pre-termination meeting with Dr. Lowery. Mr. Millner filed his original complaint on September 14, 2012 (D.I. 1), and, therefore, it follows that all of his constitutional claims made under Section 1983 fall outside of the two-year statute of limitations, and they must be dismissed. To the extent they are not dismissed, this Court should decline to exercise supplemental jurisdiction over them for the reasons set forth in the Opening Brief.

**CONCLUSION**

Defendants, State of Delaware Department of Education, Glenda Riedmiller, John Moyer, III, Lillian Lowery, Linda Rogers, Daniel Cruce, Mary Cooke, Michael Stetter, and Mark Murphy, respectfully request that this Honorable Court grant their motion for summary judgment and dismiss Reginald Millner's claims against them. Defendants also request that the Court grant Mr. Millner's voluntary dismissal of Dr. Lowery and Counts IV, VII, VIII, IX, X, and XI of the Amended Complaint. D.I. 30 at 10, n.1,2.

In addition, Mr. Millner does not dispute Defendants' argument that the remaining individual Defendants should be dismissed because there is no evidence that they terminated his DOE employment. Because they were not personally involved in the alleged deprivation of his constitutional rights, he cannot maintain a Section 1983 claim against them. D.I. 25 at 17-18; *see also Tillman v. Pepsi Bottling Group, Inc.*, 538 F.Supp.2d 754, 770 & n.30 (D.Del. 2008) (addressing a plaintiff's failure to address summary judgment arguments in its answering brief, and concluding that "[w]hile plaintiff states that she opposes the Union's summary judgment motion, her failure to dispute a single issue of material fact leaves the court little choice but to grant the Union's motion"). Finally, the statute of limitations bars Mr. Millner's federal law claims. D.I. 25 at 23-24. As set forth above and in the Opening Brief, there are no genuine issues of material fact to support any of Mr. Millner's claims, and the Defendants are entitled to judgment as a matter of law. Mr. Millner's claims should be dismissed with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Devera B. Scott*
Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302) 257-3218
Devera.Scott@state.de.us

*/s/ Scott W. Perkins*
Scott W. Perkins, ID No. 5049
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Scott.Perkins@state.de.us

*Attorneys for Defendants, State of Delaware Department of Education, Glenda Riedmiller, John Moyer III, Lillian Lowery, Linda Rogers, Daniel Cruce, Mary Cooke, Michael Stetter, and Mark Murphy*

Dated: July 10, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2014, I filed *Defendants' Reply Brief in Support of their Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I further certify that on July 10, 2014, I served plaintiff via CM/ECF.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Devera B. Scott*

Devera B. Scott, ID No. 4756
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302)739-4636
devera.scott@state.de.us